**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TEXAS ETHICS COMMISSION**; **CHRIS FLOOD**, in his official capacity as Chair of the Texas Ethics Commission; **PATRICK W. MIZELL**, in his official capacity as Vice Chair of the Texas Ethics Commission; **ROBERT L. DUNCAN**, **SEAN GORMAN**, **GEANIE MORRISON**, **RICHARD S. SCHMIDT**, **JOSEPH O. SLOVACEK**, and **MARK STRAMA**, each in his or her official capacity as a Commissioner of the Texas Ethics Commission; **JAMES TINLEY**, in his official capacity as Executive Director of the Texas Ethics Commission<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 6:26-cv-00699-LS |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED CONSIDERATION**

Plaintiff Foundation for Individual Rights and Expression, Inc. ("FIRE") moves under Federal Rule of Civil Procedure 65(a) and Local Rule CV-65 for a preliminary injunction barring Defendants from enforcing Texas Election Code §§ 253.003 and 253.094, as construed in Ethics Advisory Opinion No. 580 ("EAO 580"), against FIRE, its attorneys, or Adriane Hodges on account of FIRE's proposed pro bono representation of Ms. Hodges in litigation, not yet filed, challenging Texas Local Government Code § 152.052. Because FIRE must file Ms. Hodges's suit and obtain a ruling on her motion for preliminary relief before a statutory deadline of January 6, 2027, FIRE also asks that the Court set an expedited briefing schedule and hearing.

## INTRODUCTION

Adriane Hodges ran for Bell County Treasurer on a promise to work toward abolishing that office. She won the Republican primary, is unopposed in the general election, and will take office on January 1, 2027. Because of what she said on the campaign trail, Texas law requires her, within five days of taking office, to swear that she "elects not to be paid" and to describe "the method by which [she] intends to seek to obtain the abolition of the office" and "the date by which it is proposed to be accomplished." Tex. Loc. Gov't Code § 152.052(a). Citing that statute, the Bell County Commissioners Court has already set the Treasurer's salary at $0. A candidate who promised to keep the office, or sought to expand its powers, would face no penalty.

FIRE believes § 152.052 discriminates on the basis of viewpoint and compels speech in violation of the First Amendment, and Ms. Hodges wants FIRE to represent her in raising those claims in court. FIRE is ready to do so pro bono, as it does for all its clients. But under the Texas Ethics Commission's reading of the Election Code, FIRE's pro bono legal work would be an in-kind political contribution from a corporation. Making such a contribution is a third-degree felony for FIRE, and a third-degree felony for Ms. Hodges if she accepts. Tex. Elec. Code §§ 253.003(b), (e), 253.094(a), (c).

The First Amendment does not permit that result. For more than sixty years, the Supreme Court has held that nonprofit public-interest litigation "is a form of political expression" and association that the State may regulate only with "narrow specificity." *NAACP v. Button*, 371 U.S. 415, 429, 433 (1963); *In re Primus*, 436 U.S. 412, 431–32 (1978). And even if FIRE's services were treated as an ordinary campaign contribution, the only interest that can justify restricting contributions is preventing quid pro quo corruption or its appearance. *FEC v. Cruz*, 596 U.S. 289, 305 (2022). A public lawsuit filed on the docket, decided by a federal judge, and seeking a

judgment that would bind the County as to every official in Ms. Hodges's position presents no risk of quid pro quo corruption or its appearance.

The Fifth Circuit has already held that a nonprofit law firm faces a credible threat of enforcement under these provisions and may sue these Defendants to stop it. *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 326–33 (5th Cir. 2025). FIRE's injury is more concrete than the injury the Fifth Circuit found sufficient; FIRE has a named client and an identified lawsuit, and that lawsuit must be decided before a statutory deadline in order to prevent irreparable constitutional harm. Ms. Hodges's suit will require a motion for preliminary relief, and that motion must be decided before January 6, 2027. FIRE cannot file it until this Court acts.

## STATEMENT OF FACTS

### A. Texas bans corporate political contributions, and the Commission has declared that free legal services to a candidate qualify.

"A corporation or labor organization may not make a political contribution that is not authorized by this subchapter." Tex. Elec. Code § 253.094(a). A violation is a third-degree felony. *Id.* § 253.094(c). A person who accepts a contribution she knows was made in violation of Subchapter D commits the same offense. *Id.* § 253.003(b), (e). The ban reaches nonprofit corporations, including those organized under the "law of another state or nation." *Id.* § 253.091. Violators are also liable to the State for "triple the value of the unlawful contribution," *id.* § 253.133, and to a Commission-imposed civil penalty of "not more than $5,000 or triple the amount at issue . . . , whichever amount is more," Tex. Gov't Code § 571.173. Enforcement may be initiated by a sworn complaint filed with the Commission by a private individual. *Id.* § 571.122. Verified Compl. ("Compl.") ¶¶ 21–27.

A "contribution" includes any transfer of "services, or any other thing of value." Tex. Elec. Code § 251.001(2). A "campaign contribution" is one given "with the intent that it be used in

connection with a campaign for elective office," and "[w]hether a contribution is made before, during, or after an election does not affect its status as a campaign contribution." *Id.* § 251.001(3). An "officeholder contribution," meanwhile, is one given to defray expenses "incurred by the officeholder in performing a duty or engaging in an activity in connection with the office" that "are not reimbursable with public money." *Id.* § 251.001(4).

On December 14, 2022, by a 5–3 vote, the Commission adopted EAO 580 in response to a request from the Institute for Free Speech ("IFS"), a nonprofit public-interest law firm. Compl. ¶¶ 28–29 & Ex. A; *Inst. for Free Speech*, 148 F.4th at 326. EAO 580 holds that "[l]egal services provided without charge to candidates or political committees are in-kind contributions," and that they are campaign contributions whenever the client's "standing to bring a lawsuit depends on his status as a candidate or political committee." Compl. Ex. A. It measures the value of free services by "the legal services industry," and it tells candidates that they may be represented by corporations only "as long as they pay a fair market rate for the representation." *Id.*; Compl. ¶¶ 31–32. The Commission has not withdrawn or narrowed EAO 580, and it continues to defend it in this Court. *Id.* ¶¶ 33–34; *see Inst. for Free Speech v. Tinley*, No. 1:23-cv-01370-DAE (W.D. Tex.).

**B. Texas penalizes Ms. Hodges for her campaign platform.**

Ms. Hodges ran for Bell County Treasurer on a pledge to abolish the office, which she views as duplicating the work of the County Auditor. As she told voters: "I'm asking voters to hire me so I can fire myself." Mary Elise O'Bar, *Bell County Treasurer Candidate Promises to Eliminate Office, Following Galveston County*, *The Texan*, Nov. 3, 2025. She proposes to do so by constitutional amendment, just as ten other Texas counties, most recently Galveston County, have done. Compl. ¶¶ 44–45. She won the March 3, 2026 primary—against the incumbent—with 52.46 percent of the vote. Bella Casey, *Challenger Adriane Hodges Defeats Incumbent Gaylon Evans in Bell County Treasurer Republican Primary Election*, *Temple Daily Telegram*, Mar. 4,

2026. No candidate filed against her for the general election, and no write-in candidate declared by the August 17, 2026 deadline. She will accordingly take office on January 1, 2027, Compl. ¶ 46, and she intends to perform every duty of her office for as long as it exists. Compl. ¶ 47. She has not chosen to give up her salary; to the contrary, on August 3, 2026, she filed a grievance with the County seeking to receive her office's lawful salary. *Id.;* Ian Camacho, *Treasurer-Elect Challenges Bell County Commissioners Court Proposal to Eliminate Salary*, *Killeen Daily Herald*, Aug. 6, 2026.

Section 152.052(a) provides that, if a county officer "publicly advocated the abolition of the office" during her campaign, she "shall file an affidavit with the county payroll officer stating that [she] elects not to be paid," within five days of taking office. Tex. Loc. Gov't Code § 152.052(a). Moreover, that affidavit "must include a statement by the officer describing the method by which the officer intends to seek to obtain the abolition of the office . . . and the date by which it is proposed to be accomplished." *Id.* Once the affidavit is filed, "the county payroll officer may not issue a paycheck to the officer." *Id.* § 152.052(c); Compl. ¶¶ 48–49 & Ex. B.

Bell County has taken numerous steps to ensure that Ms. Hodges will not receive her salary upon taking office. On July 28, 2026, the County Judge told Ms. Hodges in writing that the County would not budget for the Treasurer's salary beginning January 1, 2027, and on August 2, 2026, the County published notice of a proposed Treasurer's salary of $0, citing § 152.052. Camacho, *supra*. The County expects Ms. Hodges to file the § 152.052 affidavit after she takes office. Compl. ¶ 50. Finally, on August 24, 2026, the Bell County Commissioners Court adopted a budget setting the Treasurer's salary at $0 beginning January 1, 2027. Compl. ¶ 50; Ex. 3.

Ms. Hodges cannot pay the market rate for federal civil rights litigation. Her sworn July 15, 2026, campaign finance report, covering February 22 through June 30, 2026, shows that her

campaign has exhausted its resources—which is unsurprising given her contested primary election against an incumbent followed by an uncontested general election. Her report shows $450.81 in total political contributions for the period, $2,245.83 in political expenditures, $4.45 in contributions on hand at the close of the period, and $5,300.00 in outstanding loans. Ex. 2 at 2–3; *see* Compl. ¶¶ 57, 67. That report is a public record of which the Court may take judicial notice, Fed. R. Evid. 201(b), and it is her most recent: because she has no opponent, she was not required to file reports 30 days and 8 days before the election, Tex. Elec. Code § 254.064, and her next report is not due until January 15, 2027.

**C. FIRE is ready to represent Ms. Hodges, but Texas law forbids it from doing so.**

FIRE is a nonpartisan § 501(c)(3) organization that defends free expression, in significant part through litigation it brings without charge to its clients. It has represented clients across the political spectrum and takes no position on whether Bell County should keep its Treasurer. It does not endorse candidates, contribute to campaigns, or make campaign expenditures, and it has no shareholders and no political committee. It is funded by charitable gifts, not by selling legal services in the marketplace. Its attorneys are salaried employees, so the services they provide are FIRE's. Compl. ¶¶ 15, 38–43.

Ms. Hodges wants FIRE to represent her, and FIRE would like to sue Bell County and its payroll officer in this District on her behalf and to move for preliminary relief. Compl. ¶¶ 52, 56–59. FIRE would argue that § 152.052 is viewpoint discriminatory, *see Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Brown v. Hartlage*, 456 U.S. 45, 54–59 (1982), and that it compels Ms. Hodges to swear—falsely—to a choice she has not made, *see Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *303 Creative LLC v. Elenis*, 600 U.S. 570, 586–87 (2023). Compl. ¶¶ 53–55. FIRE does not ask this Court to decide those questions; it asks only for the ability to present them to a court on behalf of Ms. Hodges.

EAO 580 forecloses that representation. Whether FIRE files before or after January 1, 2027, the representation would be a "political contribution." Before Ms. Hodges takes office, her claim and her standing would depend on what she "publicly advocated" "during [her] campaign for election," and the timing of the services "does not affect [their] status as a campaign contribution." Tex. Elec. Code § 251.001(3). After she takes office, the services would arguably defray expenses of an activity "in connection with the office" that are "not reimbursable with public money." *Id.* § 251.001(4). Compl. ¶¶ 60–63. Until November 2, 2026, Defendants had never disclaimed enforcement against nonprofit counsel who represent candidates or officeholders pro bono, and Ms. Hodges's view that the County Treasurer position should be eliminated, and the County's response to it, have drawn public controversy and opposition from local officials and the statewide association of county treasurers. *Id.* ¶¶ 64–65. FIRE has therefore not filed suit for Ms. Hodges, and it will not do so unless this Court grants relief. *Id.* ¶ 66.

On November 2, 2026, the Commission's Executive Director and General Counsel informed counsel for FIRE that the Chair and Vice Chair of the Commission had agreed that the Commission would not enforce §§ 253.003 and 253.094, as construed in EAO 580, on account of FIRE's representation of Ms. Hodges through December 15, 2026, and that the full Commission would take up the matter, including EAO 580, at its December 15 meeting. FIRE appreciates that cooperation. But the commitment expires before FIRE's work for Ms. Hodges would be complete: her motion for preliminary relief must be briefed and decided before January 6, 2027, and her case, including any appeal, will continue after that date. The full Commission, which may initiate civil enforcement or refer a matter for criminal prosecution by a vote of at least six members, has not acted, and EAO 580 remains in force. Tex. Gov't Code § 571.171(a); Compl. ¶¶ 29–33.

## LEGAL STANDARD

A movant for a preliminary injunction must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any harm the injunction may cause the defendant, and (4) that the injunction will not disserve the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). When the government is the opposing party, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In a First Amendment case, "the burdens at the preliminary injunction stage track the burdens at trial," *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429 (2006), so once FIRE shows that its protected activity is burdened, the State must justify the burden. *See Ashcroft v. ACLU*, 542 U.S. 656, 665–66 (2004). At this stage, the Court "may rely on otherwise inadmissible evidence, including hearsay evidence," *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993), including the verified complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (a "verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of" Rule 56(e)).

## ARGUMENT

### I. FIRE is likely to establish jurisdiction.

#### A. *Institute for Free Speech v. Johnson* resolves standing and ripeness.

In *Institute for Free Speech*, the Fifth Circuit held that a nonprofit law firm had standing to challenge § 253.094 and EAO 580 before any enforcement. 148 F.4th at 326–31. The court held that providing nonprofit legal services is conduct "arguably affected with a constitutional interest," *id.* at 329; that the firm faced a credible threat of enforcement because "the Commissioners have never disclaimed their intent to enforce Section 253.094" against it; that the statement of the Commissioners' counsel that enforcement would depend on the facts was "cold comfort," *id.* at

329; that the Internal Revenue Code did not defeat redressability because a § 501(c)(3) organization representing a candidate "does not propose to participate 'in' the campaign *qua* campaign or directly endorse a candidate," *id.* at 331; and that the claims were ripe even though civil enforcement requires six Commissioner votes, because "new Commissioners may adopt the view of the five who voted in favor of the Advisory Opinion," *id.* at 333.

Each of those holdings applies with even greater force here. IFS described the kinds of clients it hoped to represent; FIRE has a specific client whom it wishes to help, an identified lawsuit, and a date by which that lawsuit must be decided. Compl. ¶¶ 52–59. The credibility of the threat is "bolstered" because the authority to file a complaint is not limited to a prosecutor or an agency, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014), and because the lawsuit would be public and would name FIRE as counsel. And when a statute facially restricts expressive activity by the class to which the plaintiff belongs, courts "will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (citation omitted). There is no such evidence here. Indeed, the Fifth Circuit recently reaffirmed that, "in the speech context, we may assume a substantial threat of future enforcement." *Wang v. Paxton*, 161 F.4th 357, 362 (5th Cir. 2025) (quotation omitted). And *Wang* distinguished *Institute for Free Speech* because the Commission there "had issued an advisory opinion stating that the challenger's conduct fell within the 'ambit' of the challenged law" and "did not disavow potential enforcement in the litigation." *Id.* (citing 148 F.4th at 325, 329). Both facts are present here. EAO 580 remains in force, Compl. ¶¶ 29–33, and Defendants have not disavowed enforcement after December 15, 2026. Even if FIRE were to file suit on Ms. Hodges's behalf based on Defendants' representations, their proffered commitment lapses on December 15, 2026, while FIRE's representation of Ms. Hodges would still be underway. The

interim commitment described above does not change the analysis. It lapses on December 15, 2026, while FIRE's representation of Ms. Hodges would still be underway. And it does not bind the full Commission, which acts on enforcement only by a vote of at least six members, Tex. Gov't Code § 571.171(a), or future Commissioners, who "may adopt the view of the five who voted in favor of the Advisory Opinion." *Inst. for Free Speech*, 148 F.4th at 333. A temporary pause that leaves the advisory opinion in place, and that may expire midway through the representation, is the kind of "cold comfort" the Fifth Circuit found insufficient. *See id.* at 329. Finally, FIRE has refrained from filing suit to avoid prosecution, which is itself a cognizable injury: "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007) (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987)).

### B. Defendants are proper parties under *Ex parte Young*, and relief against them would redress FIRE's injury.

The Fifth Circuit has held that *Ex parte Young* permits official-capacity claims against the Commissioners because they "shall administer and enforce" Title 15 of the Election Code. *Inst. for Free Speech*, 148 F.4th at 333 (quoting Tex. Gov't Code § 571.061(a)(3)). The Executive Director was a defendant in that case, and the court included him within its defined term "Commissioners." *Id.* at 326, 333. Under the Commission's enforcement statute, its staff conduct a preliminary review of each sworn complaint, and the Executive Director "shall determine in writing whether the commission has jurisdiction over the violation of law alleged in a sworn complaint." Tex. Gov't Code § 571.124(a), (c); *see id.* § 571.029(a); Compl. ¶ 19.

Relief against these Defendants would redress FIRE's injury. They are the officials who receive and investigate sworn complaints, impose civil penalties, "initiate civil enforcement actions," and "refer matters to the appropriate prosecuting attorney for criminal prosecution." Tex.

Gov't Code § 571.171(a); *see id.* §§ 571.124, 571.173. An injunction barring them from taking any of those steps on account of FIRE's representation of Ms. Hodges would remove the enforcement threat that has kept FIRE from filing her suit. FIRE need not show that the injunction would eliminate every conceivable risk; a plaintiff satisfies redressability by showing that a favorable decision "will relieve a discrete injury to himself," and "need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). The Fifth Circuit has already found redressability against these same officials on this same theory. *Inst. for Free Speech*, 148 F.4th at 330–31.

## II. FIRE is likely to succeed on the merits.

### A. Nonprofit public-interest litigation is protected expression and association.

In *Button*, the Supreme Court held that the NAACP's litigation activities were "modes of expression and association protected by the First and Fourteenth Amendments." 371 U.S. at 428–29. For such an organization, "litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government . . . ." *Id.* at 429. "It is thus a form of political expression." *Id.* The State may regulate that activity only with "narrow specificity," because "[b]road prophylactic rules in the area of free expression are suspect" and "[p]recision of regulation must be the touchstone." *Id.* at 433, 438.

*Primus* applied *Button* to strike down discipline of an ACLU-affiliated lawyer who offered a prospective client free representation. The Court held that a nonprofit that "engages in litigation as a vehicle for effective political expression and association" is protected when it offers its services pro bono, and that a State's regulation of that activity "must withstand the 'exacting scrutiny applicable to limitations on core First Amendment rights . . . .'" 436 U.S. at 431–32 (quoting *Buckley v. Valeo*, 424 U.S. 1, 44–45 (1976)). The Court has repeatedly applied the same principle. *See Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7–8 (1964) ("The

right to petition the courts cannot be so handicapped."); *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 221–22 (1967); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971) ("collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment").

FIRE's proposed representation falls squarely within the protection of *Button* and *Primus*. FIRE selects cases to establish and enforce First Amendment principles, represents its clients pro bono, and uses litigation to communicate its views about free expression to courts, officials, and the public. Compl. ¶ 39. Section 253.094, as construed in EAO 580, makes that activity a crime when the client is a candidate or officeholder, forbids Ms. Hodges from accepting it, and prevents FIRE and Ms. Hodges from associating in a challenge to a law both believe is unconstitutional.

**B. The ban serves no interest the Constitution recognizes.**

Even if FIRE's services were treated as an ordinary political contribution, the State would have to show that the ban is "closely drawn" to a "sufficiently important interest." *McCutcheon v. FEC*, 572 U.S. 185, 197 (2014) (plurality opinion) (citation omitted). The Supreme Court "has recognized only one permissible ground for restricting political speech: the prevention of 'quid pro quo' corruption or its appearance." *Cruz*, 596 U.S. at 305; *see McCutcheon*, 572 U.S. at 206–07; *Citizens United v. FEC*, 558 U.S. 310, 359 (2010). It "is not an acceptable governmental objective to 'level the playing field,'" *McCutcheon*, 572 U.S. at 207, and the government "may not seek to limit the appearance of mere influence or access," *id.* at 208.

FIRE's representation of Ms. Hodges presents no risk of quid pro quo corruption or its appearance. The services would be rendered in a public lawsuit, governed by the Federal Rules of Civil Procedure and the rules of professional conduct, and decided by a federal judge. The product of those services is a judicial ruling declaring the constitutional obligations of Bell County. That ruling cannot be spent on advertising, voter contact, or any other campaign activity, and it would

protect every official who campaigns to abolish her office, not Ms. Hodges alone. Ms. Hodges has no opponent, so FIRE's services cannot affect the outcome of her election. And FIRE has no business before the Bell County Treasurer and seeks nothing from her office. Compl. ¶ 74. There is simply no articulable corruption interest at play—and that is the only interest the Supreme Court has permitted. Even if there were, a ban on all nonprofit representation fails any standard of constitutional tailoring.

### C. *Beaumont* and *Reisman* do not control.

Defendants may rely on *FEC v. Beaumont*, 539 U.S. 146 (2003), which upheld the federal ban on direct corporate contributions as applied to a nonprofit advocacy corporation, and on *Catholic Leadership Coalition of Texas v. Reisman*, 764 F.3d 409 (5th Cir. 2014), which upheld § 253.094 as applied to a nonprofit corporation's proposed in-kind contribution of its email list to its affiliated general-purpose political committee. Neither decides this case.

*Beaumont* rested on three rationales: that corporations can amass "war chests" from the economic marketplace, that the ban protects shareholders who may disagree with the corporation's political use of their money, and that nonprofit corporations could serve as conduits for evading individual contribution limits. 539 U.S. at 154–55, 159–60. None of those rationales applies here. FIRE's resources do not come from selling services in the legal marketplace; they come from donors who give to support its civil liberties work. Compl. ¶ 42; *cf. FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 259, 264 (1986). FIRE has no shareholders. Compl. ¶ 41. And FIRE cannot serve as a conduit to evade contribution limits, because Texas imposes no limits on individual contributions to candidates for county office, and because a court judgment cannot be converted into campaign resources. *Id.* ¶ 75. *Beaumont* also addressed only contributions of money. It did not consider litigation, which *Button* and *Primus* treat as a distinct and protected form of expression and association. And since *Beaumont*, the Court has clarified that quid pro quo corruption is the

only interest that can justify a limit on political contributions. *Cruz*, 596 U.S. at 305; *McCutcheon*, 572 U.S. at 206–07.

*Reisman* is narrower still. An email list is a campaign resource; its intended use is to raise money and contact voters, and the corporation in *Reisman* proposed to give it to an affiliated committee that had made direct contributions to candidates. The court upheld the ban as a measure against circumvention. *See* 764 F.3d at 441–45. There is no such interest here and, in any event, the court did not address pro bono legal representation. Compl. ¶ 77.

Nor does the Fifth Circuit's qualified immunity holding in *Institute for Free Speech* suggest a different result. The court held only that the right IFS asserted was not "clearly established" for purposes of individual-capacity damages, because *Button* and *Primus* did not address political contribution bans. 148 F.4th at 333–35. Whether a right is clearly established is a different question from whether it exists, and the court expressly declined to address the merits, leaving them "for the district court to explore in the first instance." *Id.* at 329 n.2, 335. This motion seeks only prospective relief against official-capacity defendants, to which qualified immunity does not apply. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (explaining that, "in a suit to enjoin future conduct," qualified immunity is not "available to block a determination of law"); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

**D. The ban is not closely drawn.**

Even if Texas had a cognizable interest, a total ban on pro bono representation is completely untailored. Section 253.094, as construed, prohibits every nonprofit legal organization, in Texas or elsewhere, from representing any candidate or officeholder for free in any case in which the client's standing depends on her status. The ban reaches representation that cannot affect

any election, such as the one proposed here, and litigation that produces only a public judgment. If Texas were concerned that litigation services might be used to disguise campaign support, it could require disclosure, which its campaign finance system already provides, or it could adopt a targeted exception for litigation against the government seeking to vindicate constitutional rights. Compl. ¶ 76. A "prophylactic" ban that sweeps in all of this activity cannot be reconciled with the "narrow specificity" *Button* requires. 371 U.S. at 433, 438; *see McCutcheon*, 572 U.S. at 221 (a "prophylaxis-upon-prophylaxis approach" requires the Court to be "particularly diligent in scrutinizing the law's fit" (citation omitted)).

**E. The ban burdens the right to petition.**

"[T]he right of access to the courts is . . . but one aspect of the right of petition." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *see Trainmen*, 377 U.S. at 7; *United Transp. Union*, 401 U.S. at 585. As interpreted by Defendants, Tex. Elec. Code § 253.094(a) operates to burden this form of petition in multiple ways. By its terms, EAO 580 falls on candidates and officeholders who seek judicial review of laws burdening their political activity—an effort to insulate the government from legal challenges at the heart of the First Amendment's protections. They alone are prohibited from obtaining counsel of their choice in constitutional litigation unless they can raise the substantial funds required to pay market rates. Even then, if their counsel of choice—like FIRE here—is a respected, expert nonprofit organization that does not and cannot accept payment from clients, they are out of luck. Similarly, by forbidding nonprofit organizations from representing those clients pro bono, the ban burdens FIRE's right to petition on its clients' behalf in cases where they mutually believe the First Amendment has been violated. Compl. ¶¶ 82–85. For the reasons stated above, no sufficient interest justifies these burdens.

**F. In the alternative, the ban is unconstitutionally vague.**

A criminal law must give fair notice of what it forbids, and "[w]hen speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). EAO 580 addressed litigation challenging laws "subject to the jurisdiction of the Texas Ethics Commission." Section 152.052 is a Local Government Code provision that the Commission does not administer, yet it operates on Ms. Hodges solely because of her campaign speech. Texas law also does not tell FIRE whether services rendered after a candidate takes office are campaign contributions, officeholder contributions, or neither. Compl. ¶¶ 89–90. Absent a binding interpretation that resolves these ambiguities, FIRE cannot determine with reasonable certainty whether representing Ms. Hodges is lawful, and that uncertainty, backed by criminal penalties and the risk of complaints by private individuals, chills protected expression and invites arbitrary enforcement.

**III. FIRE will suffer irreparable injury without an injunction.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). FIRE is suffering that injury now. Each day the ban remains in force, FIRE is forced to choose between abandoning its proposed suit on behalf of Ms. Hodges—itself protected speech, assembly, and petition—and exposing itself and its attorneys to prosecution and civil penalties. Compl. ¶¶ 66–68.

The injury is also tied to a statutory deadline, and money damages cannot repair it. Ms. Hodges takes office on January 1, 2027, and § 152.052(a) requires her affidavit by January 6, 2027. FIRE must prepare her case, file her suit, serve Bell County, brief a motion for preliminary relief, and obtain a ruling before that date. If relief does not come in time, Ms. Hodges must file the

compelled affidavit without any court having reviewed § 152.052. In that case FIRE's opportunity to speak and associate through that litigation will be lost. Ms. Hodges cannot pay market rates for that work. Ex. 2 at 2–3; Compl. ¶¶ 57, 67–68. No later remedy can restore that lost opportunity, and the State's sovereign immunity bars damages.

**IV. The balance of harms and the public interest favor an injunction.**

Because Defendants are state officials, the third and fourth factors merge. *Nken*, 556 U.S. at 435. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)); *Opulent Life Church*, 697 F.3d at 298.

Defendants, by contrast, would suffer little or no harm. In *Texans for Free Enterprise*, the Fifth Circuit enjoined this same Commission from enforcing a provision of the Election Code, noting that the Commission was "not able to articulate the harm it will suffer if enjoined from enforcing the relevant code provisions." 732 F.3d at 539. The requested injunction is limited to FIRE's representation of Ms. Hodges in a single public lawsuit against Bell County. It leaves § 253.094 fully enforceable against every corporate contribution of money, goods, or campaign services. And the public has a strong interest in ensuring that a state statute that penalizes an elected official for her campaign speech receives judicial review before it takes effect, rather than escaping review because the official could not obtain counsel.

**V. The requested relief is narrowly tailored, and the Court should waive bond.**

FIRE asks for relief limited to what is needed to remedy its own injury. *See Trump v. CASA, Inc.*, 606 U.S. 831, 850–54 (2025). The proposed order enjoins Defendants from enforcing §§ 253.003 and 253.094, and EAO 580, against FIRE, its attorneys, or Ms. Hodges on account of FIRE's pro bono representation of Ms. Hodges in litigation challenging § 152.052, including any appeal and related proceedings. Relief that extends to Ms. Hodges's acceptance of these services

is necessary to give FIRE complete relief because FIRE cannot represent a client who would commit a crime by accepting its help. Tex. Elec. Code § 253.003(b), (e).

The Court has discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citation omitted); *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978). The injunction will cause Defendants no financial loss, and FIRE seeks to vindicate constitutional rights in the public interest. The Court should waive bond or set it at a nominal amount.

## VI. The Court should expedite consideration.

FIRE respectfully asks the Court to order Defendants to respond within seven days of service of this motion, to permit FIRE to reply within three days after the response, and to set a hearing at the Court's earliest convenience, with a ruling, if possible, by December 1, 2026. That schedule would allow FIRE to file Ms. Hodges's suit and her own motion for preliminary relief in time for a decision before January 6, 2027. FIRE is prepared to proceed on the verified complaint and the public records submitted with this motion, and it does not anticipate the need for live testimony.

## CONCLUSION

The Court should grant the motion and enter the proposed preliminary injunction.

Dated: November 3, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

/s/ Rachel Palmer Hooper
Rachel Palmer Hooper
Texas Bar Number 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 646-1329
rhooper@bakerlaw.com

Allen J. Dickerson (*pro hac vice* application forthcoming)
Allison D. Tuck (*pro hac vice* application forthcoming)
1717 K Street, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 861-1507
adickerson@bakerlaw.com
atuck@bakerlaw.com

*Counsel for Plaintiff Foundation for Individual Rights and Expression, Inc.*

## CERTIFICATE OF CONFERENCE

Under Local Rule CV-7(g), I certify that on November 2–3, 2026, counsel for FIRE conferred with counsel for Defendants regarding the relief requested in this motion and the proposed expedited schedule. The parties discussed the requested relief and potential resolution of the motion. Defendants have not yet communicated whether they oppose the motion.

*/s/ Rachel Palmer Hooper*

## CERTIFICATE OF SERVICE

I certify that on November 3, 2026, I electronically filed this motion, its exhibits, and the proposed order with the Clerk of Court through the CM/ECF system. Because no Defendant has yet appeared, I further certify that I caused these papers to be served on each Defendant, together with the summons and verified complaint, under Federal Rule of Civil Procedure 4, and that on the same date I sent copies by email and by first-class mail, to give notice under Federal Rule of Civil Procedure 65(a)(1), to:

Ms. Amanda Arriaga, General Counsel, Texas Ethics Commission, P.O. Box 12070, Austin, Texas 78711-2070, amanda.arriaga@ethics.texas.gov

Ms. Natalie McDermon, Deputy General Counsel, Texas Ethics Commission, P.O. Box 12070, Austin, Texas 78711-2070, natalie.mcdermon@ethics.texas.gov

I further certify that on the same date, under Texas Civil Practice and Remedies Code § 30.004, I sent a copy of the verified complaint to the Office of the Attorney General of Texas, P.O. Box 12548, Austin, Texas 78711-2548, by certified mail, return receipt requested.

*/s/ Rachel Palmer Hooper*

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Texas Ethics Commission, Ethics Advisory Opinion No. 580 (Dec. 14, 2022) (also Compl. Ex. A) |
| Exhibit 2 | Adriane Hodges, Candidate/Officeholder Campaign Finance Report (Form C/OH), filed July 15, 2026 (redacted) |
| Exhibit 3 | Bell County, Order Adopting Fiscal Year 2027 Budget (Aug. 24, 2026) (excerpt showing County Treasurer salary) |